[No. 33692-4-I. Division One. February 6, 1995.]

MAYEKAWA MANUFACTURING CO., LTD., *Appellant*, v. SATOSHI SASAKI, *Respondent*.

*David H. Karlen*, for appellant.
*John G. Young*, for respondent.

KENNEDY, J. — Mayekawa Manufacturing Co., Ltd. (Mayekawa), obtained a judgment against Satoshi Sasaki in the courts of Japan. Mayekawa filed its foreign judgment with the King County Superior Court, seeking recognition of the judgment under RCW 6.40, the Uniform Foreign Money-Judgments Recognition Act. Sasaki objected to the registration of the judgment, alleging that it was not final and conclusive and was obtained without necessary due process considerations. The trial court denied recognition of the judgment, finding that it was not final and conclusive. Mayekawa appeals. We affirm.

---

[1]The parties have not provided a verbatim report of proceedings, but have provided a narrative report of proceedings pursuant to RAP 9.3. The narrative report states that: "At the conclusion of oral argument, the court announced that it was denying recognition of Mayekawa's judgment because it was not final and conclusive." Report of Proceedings, at 3.

### FACTS

In February 1993, Mayekawa, a Japanese company, filed a lawsuit in Japan against Sasaki, a Japanese national who was then residing in Bellevue, Washington. The lawsuit sought to recover 261,000,000 yen (approximately $2,500,000), based on six promissory notes signed in Japan by Sasaki.

These notes were signed in connection with an agreement between Mayekawa, Sasaki and a third party, Sapporo Daishin. Sasaki testified by deposition that the agreement was entered into for the purpose of obtaining funds from Mayekawa for use by two American companies which were headquartered in Seattle and run by Sasaki at that time.[2] Sasaki acted as guarantor of the contract.[3] The agreement provided for venue in Japan and for the application of Japanese law, in the event of litigation to collect the notes.

Mayekawa obtained a "preliminarily" enforceable judgment against Sasaki through a special proceeding available in Japan for actions upon promissory notes. An English translation of the Japanese judgment states in part:

1. The Court Order:
 1) The Defendant ("Defendant") shall repay to the Plaintiff ("Plaintiff") the sum of Two Hundred and Sixty-One Million Yen . . . and, in addition, the deferred charge of 6% per annum thereon, from April 2, 1993 until the repayment date.
 2) The cost to this case shall be borne by Defendant.
 3) *The judgment may be preliminarily enforced.*

2. Summary of the Case:
 1) Plaintiff requested Defendant for payment of promissory notes and the deferred charge, as identified in the attached list of promissory notes.
 2) (1) Plaintiff possesses the above promissory notes, and (2) Defendant handled the promissory notes as shown in the attached list.

---

[2]These companies were Pribilof Island Processors, Inc. (Pribilof), and St. Paul Seafoods, Inc.

[3]In 1989, Mayekawa filed a claim in the Pribilof bankruptcy based, in part, upon the 1989 transaction which gave rise to the six promissory notes. The creditor's committee rejected Mayekawa's claim. In 1993, Mayekawa compromised with the creditor's committee on its claim against Pribilof. A claim by Mayekawa was then allowed in the amount of $250,000. To date, Mayekawa has received approximately $50,000 on its claim in the bankruptcy court.

3) The issue in this case is whether the promissory notes in question ha[ve] been issued by Defendant jointly with Sapporo Daishin Marine Products Business Association, a non-party.

3. Conclusion:

1) It is undisputed between the parties that the seal impression under the name of the Defendant on the promissory notes is made with the seal of the Defendant, and absent any argument, the facts at issue may be recognized by the court.

2) Hence, the case has its merits.

(Italics ours.) Clerk's Papers, at 49.

Hideyuki Sakai, the attorney of record for Sasaki in the Japanese action, explains in his declaration the special Japanese proceeding by which the judgment was obtained:

2. . . . In this special procedure, judgment is rendered upon submission by the Plaintiff of copies of the notes or checks. The introduction of live testimony is not allowed except for the sole limited purpose of establishing the authenticity of the documents or to prove presentation of a note, draft or check. Live testimony concerning a fact other than the two above mentioned matters is completely prohibited. The affirmative defense is allowed, but only if it may be established under the rigid restrictions on the introduction of evidence employed in the special procedure. Counterclaims are not allowed. Additionally, the civil procedure law do [sic] not allow for witness statements in the special procedure. No prior notice of documents to be presented at the hearing is required to be given to the adverse party. The documents may be simply presented to the court for examination at the time of the hearing.

. . . .

4. If a party is not satisfied with the result of the special procedure, he may file an objection. It is important to note that the objection is not an appeal because a judgment rendered on the special procedure is neither final nor conclusive if an objection is filed. By filing an objection, the finality of the judgment rendered under the special procedure is interrupted and the case is shifted from the special to the regular procedure where under the Civil Procedure Code, it remains a case of first instance and a trial de novo is conducted on the merits of the case without any of the constraints that existed in the special procedure. We filed such an objection on behalf of Mr. Sasaki . . . and the case will now proceed to trial in the ordinary fashion.

Clerk's Papers, at 26-28.

Additional information about the special procedure is provided in the declaration of John O. Haley, director of the Asian Law Program at the University of Washington:

6. In my expert opinion, the factual statements on Japanese procedures for expedited proceedings for claims based on promissory notes made by Mr. Hideyuki Sakai are accurate and correct but his conclusion that the judgment is not final and conclusive is misleading because Mr. Sakai omits the following points:

7. Notwithstanding objections and the commencement of civil trials regarding the validity of the claims on which promissory notes are based, for purposes of civil execution under Japanese law, judgments entered pursuant to expedited proceedings for payment of promissory notes are treated as equivalent to final and conclusive judgments so long as they contain provision for preliminary execution (Civil Execution Law [Minji shikko ho], Law No. 4, 1979, as amended through Law No. 91, 1989, article 22).[4] This is the case unless a Japanese court grants a stay of execution, which generally requires the posting of security.

8. The above-mentioned judgment contains in item 3 of the Court Order (section 1) the requisite provision for preliminary execution.

9. As indicated in the Declaration of Hideyuki Sakai . . . an objecting judgment debtor is given a full and fair opportunity to contest the judgment rendered in an expedited hearing in a *new and separate* civil action with all of the procedural and due process safeguards considered necessary under United States and Washington State law, including recovery from the judgment creditor, Mayekawa, on a new judgment.

Clerk's Papers, at 44.

Hideyuki Sakai responded to John O. Haley's declaration by a supplemental declaration, wherein he stated:

2. In paragraph 7 of his Declaration, Mr. Haley made the carefully qualified statement that "*for purposes of civil execution* under Japanese law, judgments entered pursuant to expedited proceedings for payment of promissory notes are treated as equivalent to final and conclusive judgments so long as they contain provision for preliminary execution." This statement is correct if it is assumed that enforceability is the sole test of whether a judgment is final and conclusive.[5] That

---

[4]This portion of the Japanese Civil Code has not been provided to us.

[5]Sasaki concedes in his brief that the judgment is provisionally enforceable, but maintains that this still does not make the judgment final and enforceable.

is, of course, not the case. A judgment may be preliminarily enforceable and still not be final or conclusive because it does not represent the end of the proceeding in any instance. That is the case here. Once a defendant has objected to a judgment entered on expedited proceedings, that judgment is no longer considered final and conclusive under Japanese law. By filing an objection, the finality of the judgment is interrupted. The filing of the objection results in a reopening of the case but now with a full hearing on the merits of the claim without the severe restrictions on the admission of evidence associated with the expedited procedure. The judgment may remain enforceable as a provisional remedy but it is not final or conclusive. We have filed such an objection in this case so the judgment entered here is not final or conclusive under Japanese law.

3. As further evidence that the judgment on the expedited proceedings is not considered final and conclusive, it is not subject to appeal at this stage. It can only be modified by a revised judgment entered after a trial on the merits of the case.

4. It is also not accurate to state, as Mr. Haley does at paragraph 9, that the defendant may only contest the judgment in a new and separate civil action. If objection is made to a judgment entered on expedited proceedings, it is the same case which is transferred to the regular trial calendar. It is not a new action. Rather, it is simply a continuation of the same action originally filed by the plaintiff. If the defendant prevails in the regular procedure, the judgment rendered on the expedited proceeding will be cancelled or modified. This process is *not* an appeal from a final order. Instead, it is a procedure by which the same case is now heard as a case of first instance as though there had been no prior judgment.

(Italics ours.) Clerk's Papers, at 84-86.[6]

In Seattle, the paperwork for recognition of the Japanese judgment was filed in September 1993. Sasaki responded by filing his motion to deny recognition of the judgment, which was granted by the trial court on the basis of lack of finality of the judgment.

---

[6] In its reply brief, Mayekawa contends that the trial court erred in considering Sakai's supplemental declaration. Mayekawa did file a written objection with the trial court, noting that the supplemental declaration did not comply with the local court rules. According to the narrative report of proceedings the trial court stated that the objections were "noted", but made no specific ruling on them. Accordingly, we will not review this issue. *See Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 557 n.9, 815 P.2d 789 (1991) (ruling must be final and definitive to preserve right to review). We elect to consider the supplemental declaration for the appeal.

This appeal followed.[7]

DISCUSSION

Mayekawa argues that the trial court order should be reversed, and that this court should find that the preliminarily enforceable judgment is final and conclusive and enforceable under Japanese law.

Article 498 of the Japanese Civil Code provides that:

> A judgment shall not become final and conclusive prior to the expiration of the period fixed for lodging a lawful appeal . . . or for moving an objection under Article 451 . . ..[8]
>
> 2. A judgment shall be prevented from becoming final and conclusive upon lodging of an appeal . . . within the period under the preceding paragraph, or upon motion of an objection under said paragraph.

Clerk's Papers, at 92.

Thus, on its face, article 498(2) provides that a "preliminary" judgment such as the one at issue here does not become final and conclusive if an objection is filed.

 RCW 6.40.020 provides that the Uniform Foreign Money-Judgments Recognition Act applies to any foreign judgment that is "final and conclusive and enforceable where rendered". The judgment at issue here is "preliminarily" enforceable

---

[7]We review the record on appeal de novo. *See Tonga Air Servs., Ltd. v. Fowler*, 118 Wn.2d 718, 725, 826 P.2d 204 (1992) (trial court decisions to deny enforcement of a foreign judgment under the Uniform Foreign Money-Judgments Recognition Act are reviewed de novo).

[8]Article 451(2) allows an objection to the preliminary judgment to be filed within 2 weeks of entry of the judgment. Here, the objection was filed within the 2 weeks, and litigation on the merits is proceeding in the Japanese courts. That litigation could result in approval or revocation of the preliminary judgment under article 457, which provides:

> In case a judgment to be rendered under the provision of the preceding Article is consistent with a judgment under a litigation of bills, the court shall approve the judgment under a litigation of bills: Provided, That this shall not apply when the procedure for a judgment under a litigation of bills is contrary to laws.
>
> 2. Excepting the cases where a judgment under a litigation of bills is approved in accordance with the provision of the preceding paragraph, a new judgment shall revoke the judgment under a litigation of bills.

Clerk's Papers, at 91.

under Japanese law, but not final and conclusive[9] by the plain language of the Japanese code. If the words "final and conclusive" as used in the Japanese Civil Code mean something different from "final and conclusive" as used in the recognition act, the distinction is not apparent to this court.

In *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973), *cert. denied*, 416 U.S. 986 (1974), the court concluded that the arbitration judgment at issue was final and conclusive. The *Curacao* court pointed out that, after the arbitration award, either party had 3 months under *Curacao* law to seek review of the award before it became final. However, neither party availed itself of this opportunity. Therefore, the *Curacao* court held that the arbitration judgment was final and conclusive under *Curacao* law.

In contrast, Sasaki has challenged the preliminarily enforceable judgment by filing an objection. The parties' disagreement over whether the trial on the merits following the objection results in a reopening of the proceeding, according to Sasaki, or a new proceeding, according to Mayekawa, begs the real question. This court must decide whether Sasaki's objection to the judgment prevents the preliminarily enforceable judgment from becoming final and conclusive and enforceable under Japanese law. This court's only means of determining Japanese law is to compare the plain language of the statutes provided to us with the conflicting expert opinions. Here, the plain language of the statutes must prevail, particularly since Professor Haley (1) cites to an amended code section in support of his opinion which has

---

[9]Mayekawa seemingly misreads RCW 6.40.030 when it argues that this judgment is automatically conclusive merely because it grants recovery of a sum of money. RCW 6.40.030 actually requires that to be entitled to recognition: (1) the money judgment must meet the due process and jurisdictional requirements of subsection .040 of the act, and (2) the money judgment must be "final and conclusive and enforceable" under subsection .020 of the act. Only when these requirements have been satisfied is the money judgment conclusive between the parties. Although the act applies only to money judgments (*see* RCW 6.40.010(2)), not all money judgments are automatically conclusive. They are conclusive as between the parties only if they meet the requirements of subsections .020 and .040.

not been provided in the record, and (2) does not reconcile his opinion with the plain language of article 498 of the Japanese Civil Code.

Our determination that Mayekawa's preliminary judgment does not satisfy the finality requirement of RCW 6.40.020 makes it unnecessary to decide whether the judgment satisfies the due process element of the conclusiveness requirement contained in RCW 6.40.040 (foreign judgment not conclusive if rendered under a system not compatible with requirements of due process).[10]

■ We next consider whether the facts of this case justify recognition of Mayekawa's preliminary judgment through the savings clause of RCW 6.40.070,[11] and the application of the principle of international comity.

> Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws.

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017 (1972).

---

[10]We do note, however, that we are not offended on due process grounds by the Japanese special procedure which allows the payee of a note to preliminarily collect from the obligor where the payee has the original note, the note is overdue and the note has not been paid. Seemingly, in Japan, where the payee makes out such a prima facie case, and the court does not grant a request for a stay of execution, the payee may collect on the note subject to the possibility of having to repay part or all of the money if the maker asserts a defense or a counterclaim and prevails at a trial on the merits.

Here, Sasaki, who is a Japanese national, agreed to venue in Japan and to the application of Japanese law. He also agrees that the judgment is preliminarily enforceable under Japanese law. Moreover, Mayekawa has stipulated to a preliminary offset, for the sum it may yet be able to collect through the Bankruptcy Court, pending the final outcome of the ongoing litigation in Japan. Therefore, under the facts of this case, due process concerns have been satisfied.

[11]RCW 6.40.070 states: "This chapter does not prevent the recognition of a foreign judgment in situations not covered by this chapter."

■ A generally recognized rule of international comity states that an American court will only recognize a final and valid judgment. *Pilkington Bros. P.L.C. v. AFG Indus. Inc.*, 581 F. Supp. 1039, 1045 (D. Del. 1984). However, "[m]odifiable foreign orders can be granted extraterritorial effect even though they might not be 'final' for purposes of res judicata." *Pilkington*, 581 F. Supp. at 1045.

Mayekawa asks this court to recognize its preliminarily enforceable judgment even though it might not be considered final for purposes of res judicata, citing *Pilkington*. According to Mayekawa, principles of international comity allow recognition of modifiable foreign judgments, when to do so: (1) would not lead to inconsistent interpretations and enforcement of foreign law; (2) would not lead to forum shopping; and (3) would not lead to confusion between the courts of different countries. *See Pilkington*, 581 F. Supp. at 1046. Mayekawa argues that this is exactly the case here.

We do not believe that the principle of international comity dictates that we reverse the trial court. We conclude that the enforcement of Mayekawa's preliminary judgment in the United States might well lead to inconsistent interpretations and enforcement of foreign law. The potential for confusion among lawyers and courts is highlighted by the battle of the dueling expert declarations presented to the trial court. Even a cursory analysis of this question demonstrates that the interests of comity do not outweigh the competing interests involved.

Under the recognition act, the foreign-judgment creditor has the burden of establishing that the judgment is final and conclusive and enforceable where rendered. Mayekawa's showing was insufficient in this regard. We are not inclined to substitute principles of comity for a circumstance covered by the recognition act. Absent compelling reasons, we are not inclined to utilize comity to enforce a nonfinal, nonconclusive foreign money judgment.

Finally, nothing in this ruling prevents Mayekawa from again applying for recognition, if, as and when its preliminarily enforceable judgment becomes final and conclusive

and enforceable at the close of the litigation now under way in Japan.

Affirmed.

GROSSE and AGID, JJ., concur.

Review denied at 126 Wn.2d 1024 (1995).