[No. B192862. Second Dist., Div. Five. July 24, 2007.]

SOCIETE CIVILE SUCCESSION RICHARD GUINO et al., Plaintiffs and Appellants, v.
REDSTAR CORPORATION et al., Defendants and Respondents.

Counsel

Morris Law Firm, Richard W. Morris and Richard W. Stevens for Plaintiffs and Appellants.

David Steiner & Associates and David Paul Steiner for Defendants and Respondents.

Opinion

MOSK, J.—

## INTRODUCTION

Plaintiffs and appellants Societe Civile Succession Richard Guino, a French trust; Alain Renoir; and Jacques Renoir brought an action to enforce in California an April 8, 1998 French judgment (French judgment) against defendants Redstar Corporation, Jean-Emmanuel Renoir, and Louise Hernandez. The Los Angeles Superior Court (trial court) enforced a portion of the French judgment for 30,000 French francs,[1] but denied enforcement of that portion of the French judgment for 3 million francs as being a provisional remedy that was not enforceable under California's Uniform Foreign Money-Judgments Recognition Act (Act). (Code Civ. Proc., § 1713 et seq.[2]) The issue in this case is the meaning and effect of those portions of the French judgment that provide that defendants are to pay to plaintiffs, "as a reserve" ("à titre de provision"),[3] the amount of 3 million francs and "[o]rders the provisional execution of this measure" ("Ordonne l'exécution proviso ire de cette mesure"). In reversing the judgment, we hold that the French judgment's monetary provisions, including the 3 million francs, are enforceable under the Act as a foreign money judgment.

## BACKGROUND

Plaintiffs claim that defendants improperly made reproductions of certain sculptures jointly created by Pierre-Augustine Renoir and Michel Guino. On

---

[1] Reference to francs is to French francs. France now uses the euro.

[2] All United States statutory references are to the California Code of Civil Procedure, unless otherwise specified.

[3] Recognizing that foreign legal terminology may be subject to varying translations into English (cf. *Mulford v. LeFranc* (1864) 26 Cal. 88, 100 ["Different translators, equally competent, will use different language, and give a different gloss, or shade to the meaning in transferring the idea intended to be conveyed from one language to another . . ."]), we utilize the translation of the French judgment in the record.

April 8, 1998, plaintiffs obtained a French judgment finding that "the production and marketing of the sculptures from shared works by Richard GUINO and Pierre Augustine RENOIR, without the authorization of the beneficiaries, constitutes [*sic*] acts of forgery." Thus, the French judgment provides that defendants were ordered as follows: to pay plaintiffs "in solidium" (jointly and severally) "as a reserve, the amount of THREE MILLION FRANCS (F 3,000,000). Orders the provisional execution of this measure. Condemns them, moreover, to pay the amount of THIRTY THOUSAND FRANCS (F 30,000) subject to article 700 of the New Code of Civil Procedure [expenses])." The French judgment adds, "Given articles 15 and 16 of The Hague Convention of March 18, 1970, to which the United States of America and Frances are parties, [¶] Gives letters rogatory to any French diplomatic or consular authority in the United States, to: 1) request REDSTAR CORPORATION, Mrs. HERNANDEZ, Mr. Jean-Emmanuel RENOIR, who, in this case, shall be represented by a counsel of their choice, to submit all accounting elements in support of the castings undertaken of the 9 above mentioned works, and namely the log of castings, the sales accounting, and any specific detail on the nature of the promotion and distribution transactions undertaken. [¶] Ask them also to specify the contents of the stocks by number, the storage place and the name and address of the company (or companies) assigned to do the castings. [¶] Finally ask them to produce the catalogues showing the works. [¶] 2) record their eventual comments."

In the discussion of the reasons for the judgment prior to the actual disposition, the French judgment contains the terms "temporary payment" ("paiement provision") and "temporary amount" ("la somme provisionnelle"). The French court stated in the French judgment that because of the extensive damages suffered by plaintiffs, it was awarding plaintiffs 3 million francs, and that "[g]iven the age of the events and magnitude of the prejudice," the award justifies "a provisional condemnation which should be accompanied by a provisional execution."[4] The French court further provides that "letters rogatory should be submitted to French diplomatic or consular authorities to solicit defendants to provide all of the elements allowing to assess the scope of the production and marketing of the forged works."

Plaintiffs commenced a proceeding in the trial court to enforce the French judgment under the Act. On a prior appeal, we reversed the California judgment in favor of plaintiffs on the basis of inadequate service. (*Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145 [20 Cal.Rptr.3d 603].) Following proper service, defendants brought in the trial court a "Motion to Challenge Judgment" contending that, except for the 30,000 francs in costs, the French judgment was not enforceable under the Act because the other monetary

---

[4] As we explain, the court in the French judgment awarded a sum of money that is a final judgment, and that judgment was immediately enforceable.

provisions did not constitute a "judgment of a foreign state granting . . . recovery of a sum of money." (§ 1713.1, subd. (2).) There was no dispute that the nonmonetary portions of the French judgment were not enforceable under the Act.

After hearings, supplemental submissions, and a motion for reconsideration, the trial court ruled that "the French Judgment only shall be enforced as to the 30,000 franc award and no other portions." The trial court stated that "Plaintiff has failed to establish that any portion of the French Judgment is for a fixed sum, with the exception of the portion of the French Judgment that awards Plaintiffs' 30,000 francs. This Court finds that the remaining sums mentioned in the French Judgment are part of a provisional mechanism, which required *inter alia* that an equitable accounting be completed so as to fix the sum. The Court is not aware that any such accounting was attempted between April 8, 1998 [date of French judgment] and April 20, 2006." Plaintiffs have appealed, contending that the trial court erred by not enforcing the 3-million-franc award in the French judgment.

## DISCUSSION

### A. *Standard of Review*

A determination of the law of a foreign nation is a question of law that is made by judicial notice. (Evid. Code, §§ 310, subd. (b), 452, subd. (f).) The interpretation of any writing is a question of law even if extrinsic evidence has been introduced, as long as the extrinsic evidence is not conflicting. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) There is no conflicting extrinsic evidence concerning the meaning of the French judgment. It follows that the interpretation of the French judgment is a question of law. We are not bound to accept the trial court's interpretation simply because different inferences may be drawn from uncontradicted evidence. (*Id.* at p. 866 & fn. 2.) The construction of the French statutes in question also is a matter of law. (*Estate of Arbulich* (1953) 41 Cal.2d 86, 89–90 [257 P.2d 433]; see also *City of Los Angeles v. City of San Fernando* (1975) 14 Cal.3d 199, 231 [123 Cal.Rptr. 1, 537 P.2d 1250], disapproved on other grounds in *City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1248 [99 Cal.Rptr.2d 294, 5 P.3d 853]; *Korea Water Resources Corp. v. Lee* (2004) 115 Cal.App.4th 389, 394, fn. 2 [8 Cal.Rptr.3d 853] (*Korea Water Resources*) [judicial notice].) We review these questions of law de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

## B. *The Act*

 Section 1713.3 of the Act provides for the enforceability of a foreign money judgment.[5] The Act applies "to any foreign judgment that is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." (§ 1713.2.) The Act defines a foreign judgment as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty . . . ." (§ 1713.1, subd. (2).) Section 1713.4 provides grounds for "non-recognition" of a foreign judgment—i.e., when the "foreign judgment is not conclusive."[6] None of those grounds are applicable in this case.

## C. *Recovery of a Sum of Money Under the Act*

The trial court denied enforcement on the theory that the 3-million-franc award was not a "fixed sum" and that the amount was subject to modification—i.e., "part of a provisional mechanism" that required "an equitable accounting" so as to fix the sum. Although the Act contains no reference to a requirement of a "fixed sum," the Act provides that a foreign judgment is enforceable if it is a foreign state judgment granting recovery of "a sum of money." (§ 1713.1, subd. (2).) The French judgment here specifically provides for the payment of 3 million francs—"a sum of money."[7] The trial court suggests that the sum was not "fixed" because it was provisional. The

---

[5] Section 1713.3 states, "Except as provided in Section 1713.4, a foreign judgment meeting the requirements of Section 1713.2 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. The foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit, except that it may not be enforced pursuant to the provisions of Chapter 1 (commencing with Section 1710.10) of this title."

[6] Section 1713.4 states, "(a) A foreign judgment is not conclusive if [¶] (1) The judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law; [¶] (2) The foreign court did not have personal jurisdiction over the defendant; or [¶] (3) The foreign court did not have jurisdiction over the subject matter. [¶] (b) A foreign judgment need not be recognized if [¶] (1) The defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; [¶] (2) The judgment was obtained by extrinsic fraud; [¶] (3) The cause of action or defense on which the judgment is based is repugnant to the public policy of this state; [¶] (4) The judgment conflicts with another final and conclusive judgment; [¶] (5) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or [¶] (6) In the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action."

[7] Cases under the Uniform Foreign Money-Judgments Recognition Act have held that a judgment for unspecified amounts is not enforceable as a foreign money judgment because it does not award a specific sum of money. (See, e.g., *Bianchi v. Savino Del Bene Intern. Freight* (2002) 329 Ill.App.3d 908 [264 Ill.Dec. 379, 770 N.E.2d 684, 696–697] [Italian judgment to pay " 'back wages' " or " 'matured salary' " does not provide "a specific sum of money" and

phrase "Orders the provisional execution of this measure" means that the order for payment of the 3 million francs is immediately enforceable, notwithstanding the availability of an appeal. It does not mean that the order is provisional in the sense that it is tentative or subject to revision within the proceeding. (French Code of Civil Procedure article 504;[8] see also French Code of Civil Procedure article 515.[9])

Plaintiffs submitted uncontradicted material from an official in the French Ministry of Justice and from a French "huissier de justice" (one who has certain judicial and legal functions [see *Dayan v. McDonald's Corp.* (1984) 125 Ill.App.3d 972 [81 Ill.Dec. 156, 466 N.E.2d 958, 968–969]; Black's Law Dict. (8th ed. 2004) 757]), both of whom cited applicable laws and declared, in effect, that the French judgment was enforceable in this case whether or not it was subject to appeal[10] and also because the appeal was dismissed as untimely.[11]

In providing for an accounting, the French court did not suggest that its 3-million-franc monetary order in the matter under consideration was not for a fixed sum of money. The French court did not retain jurisdiction or specify any mechanism within the proceeding before it to enforce the results of an accounting. The French judgment, in effect, required an advance payment to plaintiffs of the amount owed to plaintiffs. The amount ordered was the French court's determination of the estimated minimum amount owing. As stated in the reasons for the judgment, although plaintiffs had sought more, the French court awarded the amount of 3 million francs because "the prejudice suffered" by plaintiffs is "extensive according to the evidence." The

---

therefore does not meet the requirements of the statute]; *Nicor Intern. Corp. v. El Paso Corp.* (S.D.Fla. 2003) 292 F.Supp.2d 1357, 1365.)

[8] The translation of article 504 of the French Code of Civil Procedure by Legifrance (Web site of the government of France) states, "The proof of its [judgment's] enforceable nature appears on the [judgment] itself where the latter is not subject to a review capable of staying its execution *or where it enjoys the benefit of provisional enforcement. . . ."* (<http://195.83.177.9/code/liste.phtml?lang=uk&c=39&r=7207> [as of July 24, 2007], italics added; see also Dodd (translator), The French Code of Civil Procedure in English (2004) 96, 98.)

[9] The translation of article 515 of the French Code of Civil Procedure provided by Legifrance, states, "In addition to cases where it is as of right, provisional enforcement may be ordered, at the request of the parties or sua sponte, each time the judge deems it proper and compatible with the nature of the matter if it is not prohibited by law. [¶] It may be ordered for the whole or part of the [judgment.] In no case, may it be ordered in relation to costs." (<http://195.83.177.9/code/liste.phtml?lang=uk&c=39&r=7210> [as of July 24, 2007]; see also Dodd (translator), The French Code of Civil Procedure in English, *supra*, at p. 98.)

[10] The huissier stated that the order in the French judgment for "provisional execution" allows a prevailing party "to immediately seek the execution of a court decision, despite the staying effect of the ordinary review process constituted by the appeal."

[11] We grant defendants' motion to strike certain material submitted for the first time in plaintiffs' reply brief.

court added that, "the age of the events and the magnitude of the prejudice justify a provisional condemnation which should be accompanied by a provisional execution . . ."—i.e., immediate enforceability.

There was no further act or proceeding to occur in the French action in which the judgment in question was rendered. Even if the ordered partial payment amount of 3 million francs is subject to a later accounting and subsequent action on that accounting to revise the amount of that 3-million-franc payment, the payment order grants a "recovery of a sum of money." (§ 1713.1, subd. (2).) Although theoretically an accounting might show an amount of less than 3 million francs owing, that lesser amount could only be established in a separate and subsequent action. If some other action arises in which another or different money judgment occurs, then that judgment may also be enforceable. Here, we deal only with the enforceability of the existing foreign money judgment. By virtue of the express language of the judgment, under French law discussed above, plaintiffs could immediately enforce that measure providing for such advance payment. Thus, the trial court erred in concluding that the 3-million-franc award was not a judgment "granting . . . recovery of a sum of money" under the Act. (§ 1713.1, subd. (2).)

### D. *Final and Conclusive and Enforceable Under the Act*

The trial court's conclusion raises the issue of whether the award of 3 million francs qualifies under section 1713.2 as a foreign judgment that is "final and conclusive and enforceable" in France. As we have discussed, the final judgment is enforceable

There is no indication that the French judgment was not "final." Even if not necessary to enforce the foreign judgment under the Act, the appellate process in France had been completed.[12] There is uncontradicted evidence that the French judgment is treated in France as final and, as stated by one of the experts, "has the force of *res judicata*."

---

[12] That the French judgment could be appealed would, in any event, not necessarily preclude its enforceability under the Act as a final judgment. (§ 1713.2; compare *Manco Contracting Co. (W.L.L.)* v. *Bezdikian* (2007) 151 Cal.App.4th 749, 756 [60 Cal.Rptr.3d 154] [foreign judgment may or may not be final if there is an appeal, depending on the law of the foreign jurisdiction] with *Korea Water Resources, supra*, 115 Cal.App.4th at pp. 398–400 ["final" means "not interlocutory but will be changed only via the appellate process"].) Although section 1713.2 states that a foreign judgment "is final and conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal," section 1713.6 provides: "If the defendant satisfies the court either that an appeal is pending or that he is entitled and intends to appeal from the foreign judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal."

■ The French judgment is "conclusive" under sections 1713.2 and 1713.3. It did not fit within the terms of section 1713.4, subdivision (a), as being "not conclusive." A provision in a final judgment for an accounting does not mean that the award of money in that judgment is not conclusive. (Cf. *Island Territory of Curacao v. Solitron Devices, Inc.* (2nd Cir. 1973) 489 F.2d 1313, 1323 [an arbitration award allowed parties to demand further arbitration and more extensive damages; the foreign judgment on the award was nevertheless final and conclusive and therefore enforceable].) As noted by the French lawyer for plaintiffs, plaintiffs could obtain an accounting and then in a subsequent and independent action seek additional damages based on the accounting.

*Korea Water Resources, supra,* 115 Cal.App.4th 389, cited by defendants, is distinguishable. In that case, a party appealed a Korean judgment to the Korea Supreme Court, which reversed the judgment on one of the several legal theories on which it was based, reduced the amount of the provisional execution order, and remanded the case for retrial. In a proceeding under the Act to enforce the Korean trial court judgment as a foreign money judgment, the California Court of Appeal held that the Korean judgment was not conclusive so as to be enforceable under the Act. The court said, "We are not persuaded that the Korean judgment is conclusive merely because it remains to some extent provisionally enforceable. The Korea high court has significantly reduced the amount of the provisional execution order. This reduction indicates the amount of the judgment is in flux and is not based on a calculated damages award. As stated in the Restatement Second of Conflict of Laws, section 108: 'A judgment for the payment of money will not be enforced in other states unless the amount to be paid has been finally determined under the local law of the state of rendition.' " (*Korea Water Resources, supra,* 115 Cal.App.4th at p. 402, fn. omitted.) The California Court of Appeal noted that with respect to the judgment, there was "much more than a mere *potential* for change on appeal; rather, the continued viability of the judgment has already been compromised as a result of the appellate process." (*Ibid.*; see also *Mayekawa Mfg. Co., Ltd. v. Sasaki* (1995) 76 Wn.App. 791 [888 P.2d 183] [Japanese preliminarily enforceable judgment subject to objections is not a final and conclusive money judgment that can be enforced under the Uniform Foreign Money-Judgments Recognition Act].)

As distinguished from the situation in *Korea Water Resources, supra,* 115 Cal.App.4th 389, the French judgment had not been questioned or revised by an appellate court or remanded to the trial court. Although not necessary for enforcement under the Act, the appellate process had concluded with no change to the French judgment. As we discussed, there is no indication that the French court retained any continuing jurisdiction over this proceeding.

Unlike in *Korea Water Resources*, the French judgment was not subject to further proceedings in the trial court in the case in which the judgment was rendered.

Restatement Second of Conflicts of Laws, section 108, page 321, referred to by the court in *Korea Water Resources*, 115 Cal.App.4th at page 402, is not inconsistent with our position. The amount to be paid in the French action has been finally determined in that action under French law. (See Rest.2d Conflict of Laws, § 108, p. 321.) As set forth in comments to sections 107 and 108 of the Restatement Second of Conflicts of Laws, section 108 is an application of section 107; section 107 deals with a nonfinal judgment—one where "further judicial action by the court rendering the judgment is required to resolve the matter litigated." (Rest.2d Conflict of Laws, § 107, p. 320; *id.*, § 107, com. a, p. 320; *id.*, § 108, com. d, p. 322.) Here there is no further judicial action required of the court rendering the judgment. The French judgment is a final judgment under French law.

### E. *Conclusion*

■ There is nothing in the enforcement or execution of the judgment section of the French Code of Civil Procedure that suggests that the French judgment is not a final and conclusive judgment for a sum of money. (See French Code of Civil Procedure, Articles 502 et seq. (<http://195.83.177.9/code/liste.phtml?lang=uk&c=39&r=7207-7210> [as of July 24, 2007]; see also Dodd (translator), The French Code of Civil Procedure in English, *supra*, at pp. 95–100.) The judgment requiring a payment of 3 million francs is a "final and conclusive and enforceable" (§ 1713.2) judgment that grants a "recovery of a sum of money." (§ 1713.1, subd. (2).) Thus, that portion of the judgment awarding money is enforceable under the Act.

Accordingly, the judgment of the trial court is reversed. We remand the matter for the trial court to enforce the French judgment and for further proceedings so as to enter a judgment in favor of plaintiffs in the sum of the United States dollar equivalent of 3,030,000 francs. (See *Pecaflor Construction, Inc. v. Landes* (1988) 198 Cal.App.3d 342, 350 [243 Cal.Rptr. 605] ["a California court, when enforcing a foreign judgment rendered in foreign currency, must ordinarily convert the foreign currency to American dollars using the exchange rate that was in effect at the time of the foreign judgment"].)

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court to enforce the French judgment in the amount of 3,030,000 French francs and to

conduct further proceedings so as to enter a California judgment in the United States dollar equivalent of 3,030,000 French francs. Plaintiffs are awarded costs.

Turner, P. J., and Armstrong, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 24, 2007, S155908.