Filed 4/18/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HYUNDAI SECURITIES CO. LTD., | B242002 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC456484) |
| v. | |
| IK CHI LEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Alan S. Rosenfield, Judge.  Reversed and remanded.

Kim, Park, Choi & Yi, Tony K. Kim, Daniel Kang, and Michael Schillaci for Defendant and Appellant.

Lim, Ruger & Kim, Richard M. Ruger, Lisa J. Yang, and George T. Busu for Plaintiff and Respondent.

## INTRODUCTION

We hold that a proceeding under California's "Uniform Foreign-Country Money Judgment Recognition Act" (Code Civ. Proc., §§ 1713-1724 (the Act))[1], is an action and subject to the requirements applicable to all actions. Because the trial court in this case recognized the foreign-country money judgment upon a petition rather than upon a duly noticed motion for summary judgment, judgment on the pleadings, or trial, we reverse the judgment.

## BACKGROUND

Defendant and appellant Ik Chi Lee (Lee) was the chief executive officer of Hyundai Securities Co., Ltd. (Hyundai) between the years 1996 and 2000. Several individuals who were shareholders of Hyundai brought a shareholders' derivative action in the Seoul Southern District Court against Lee, as an officer of Hyundai, for, among other things, securities fraud by Lee during his term as chief executive officer of Hyundai (the Korean Action). Lee appeared and defended the Korean Action.

In the Korean Action, the Seoul Southern District Court entered against Lee and in favor of Hyundai a judgment in the principal amount, which, when converted to United States dollars as of the time of entry of judgment, was approximately $18,839,155. The Korean Judgment also provided for prejudgment interest at five percent per annum and post judgment interest at the rate of 20 percent per annum, payable according to Korean law.

Lee appealed the Korean Judgment to the Seoul Court of Appeals, which "dismissed" the appeal. Lee then appealed the Seoul Court of Appeals decision to the Korean Supreme Court, which also "dismissed" the appeal. Both "dismissals" were based on the appeals lacking merit.

---

[1] All further statutory references are to the Code of Civil Procedure.

2

The Korean Supreme Court, by upholding the monetary portions of the Korean Judgment, rendered the Korean Judgment final, conclusive, and enforceable. There is no evidence that the monetary portions of the Korean Judgment were vacated, modified, or set aside, or that there could be any further appeal.

Hyundai filed an action in the Los Angeles Superior Court pursuant to the Act, seeking recognition of the Korean Judgment. Thereafter, Hyundai filed a first amended complaint in which Hyundai alleged the existence of the Korean Judgment that awarded money damages; that the Korean Judgment was final, conclusive, and enforceable in Korea; that Hyundai had already taken steps to execute, and did execute, the Korean Judgment against certain of Lee's real and personal properties in Korea; and that after the amount collected by Hyundai and with accrued interest, Lee owes Hyundai $40,785, 124.11 plus interest that continues to accrue by $12,926.01 each day.

In his answer, Lee alleged a general denial and asserted his affirmative defenses, some of which are those arguably covered by section 1716, subdivision (c) as permitted defenses to recognition of a foreign-country money judgment. Lee asserted that there is a conflicting judgment by which Hyundai was awarded all damages it seeks in this action, that the damages constitute a fine or penalty, and that the postjudgment award of 20 percent interest awarded in the Korean Judgment is unenforceable in California. He also challenged Hyundai's standing because the Korean action was a derivative action.

In its action, Hyundai filed a "Notice of Petition and Petition For Entry Of The California Judgment pursuant to the Uniform Foreign Country Money Judgments Recognition Act," along with declarations of Korean attorneys and its attorney in this action and points and authorities. In the "petition," Hyundai set forth the existence of the Korean Judgment showing it was compensatory in nature and that it was final, conclusive, and enforceable in Korea. Hyundai asserted that although it was not initially named as plaintiff in the Korean Action that was brought by Hyundai's shareholders as a shareholder derivative action, Hyundai was the judgment creditor under the Korean Judgment.

3

In opposition, Lee argued that judgment could not be entered on a "petition" rather than on a motion for summary judgment or trial. Lee also argued his affirmative defenses, and provided law and facts in support of his allegations. Among them, Lee asserted that he was entitled to an offset because Hyundai allegedly recovered a large sum of money in a separate Korean lawsuit in which Lee was not a party; Hyundai lacked standing; the Korean Judgment was not compensatory in nature, but rather was a fine or penalty arising out of securities violations—"the penal conduct for which Lee went to jail in Korea"—and therefore the judgment cannot be recognized under the Act; and the postjudgment interest rate of 20 percent awarded in the Korean Judgment was "repugnant" to California public policy. The trial court sustained Lee's evidentiary objections without prejudice and requested further briefing on several issues.

Hyundai filed a supplemental brief and a declaration from another Korean attorney on the nature of the Korean action. Lee objected to the new declaration challenging the declarant's qualification to give a declaration on Korean law described in the declaration, and asserted that the Korean law the attorney provided did not resolve the issues raised by Lee. The trial court did not rule on the supplemental objections.

Following oral argument, the trial court granted "the motion" and rejected the request for a statement of decision because "[t]his is specifically being entered without a summary judgment, without a trial, and has no entitlement to a Statement of Decision." After further submissions on Hyundai's proposed judgment, a judgment was entered. A timely appeal followed.

## DISCUSSION

### A.    Standard of Review

Questions of law regarding the application and requirements of the Act are reviewed de novo. (See *People v. ex rel Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801; *MacIsaac v.*

4

*Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082.)

### B. The Act

The Act, which is based on the Uniform Foreign-Country Money Judgments Recognition Act (13 (Part. II)) Uniform Laws Annotated, Civil Procedural and Remedial Laws (2012 Supp.) 18), applies to foreign-country judgments that grant or deny recovery of a sum of money and that are final, conclusive, and enforceable under the law of the foreign country. (§§ 1715(a), 1724.) The Act, contained in Code of Civil Procedure Part 3—"Of Special Proceedings of a Civil Nature"—sets forth the procedure for recognition of a foreign-country money judgment by providing the requirement that "the issue of recognition shall be raised by filing an action" or by "counterclaim, cross-claim, or affirmative defense." (§ 1718, subds. (a), (b).) The Act contains a 10-year period of limitations for bringing an action to recognize a foreign-country money judgment. (§ 1721.) It allocates the burden of proof for establishing whether a foreign-country money judgment is within the scope of the Act and whether there is any ground for not recognizing the existence of the judgment. (§§ 1715(c), 1716.) The party seeking recognition of a foreign-country money judgment has the burden to establish entitlement to recognition under the Act, while the party resisting recognition has the burden of establishing a specified ground for nonrecognition. (*Ibid.*) The Act specifies that if the court finds that a foreign-country money judgment is entitled to recognition in California then, to the extent the judgment grants or denies recovery of a sum of money, it is conclusive between the parties to the same extent as the judgment of a sister-state entitled to full faith and credit in this state would be conclusive, and the foreign-country money judgment is enforceable in the same manner and to the same extent as a judgment rendered in this state. (§ 1719.)

The Act provides for various defenses if the foreign-country money judgment is final, conclusive, and enforceable where rendered. These include, in essence, when the foreign-country money judgment was rendered under circumstances that violated due

5

process or lacked impartiality or integrity, was without jurisdiction, was without notice, or was in conflict with California public policy or another judgment. (§ 1716.) Unless one of the specified defenses applies, the court "shall recognize a foreign-country judgment to which [the Act applies]." (§ 1716, subd. (a).) The Act does not apply, inter alia, to a fine or penalty. (§ 1715, subd. (b)(2).)

### C.     Rules of Interpretation

"Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statutes' purpose, legislative history, and public policy. [Citations.]" (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

### D.     Procedure Under the Act

The Act states that "the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment" (§ 1718, subd. (a)), and authorities suggest that the procedures associated with any action set forth in the Code of Civil Procedure are applicable to an action filed under the Act. In *Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, arising under a predecessor of the Act, we held that the Uniform Foreign Money-Judgments Recognition Act then in effect "requires that foreign country money judgments be enforced by bringing an action, and, as in other actions, a summons must be served to obtain personal jurisdiction over a defendant (Code Civ. Proc., § 410.50, subd. (a))." (*Renoir v. Redstar Corp., supra,* 123 Cal.App.4th at p.

6

1148.)  In *Manco Contracting Co. (W.L.L.) v. Bezdikian* (2008) 45 Cal.4th 192 (*Manco*), which arose under the predecessor of the Act, the Supreme Court held that California courts must look to the law of the foreign jurisdiction to determine the judgment's finality and conclusiveness and that the 10-year statute of limitations in section 337.5, subdivision (b) applicable to the enforcement of sister-state money judgments, applies to actions under the predecessor of the Act.  In discussing the statute of limitations issue, the court pointed out that the Legislature amended the statute so that the foreign-country money judgment must "'be enforced with "all the normal trappings of an original action" that had existed before in connection with the enforcement of sister-state judgments. [Citations.]'  (*Renoir v. Redstar Corp., supra,* 123 Cal.App.4th at pp. 1150-1151.)"  (*Id.* at p. 205.)  The court went on, "California has not enacted an expedited procedure for the registration of foreign judgments.  Rather, a party seeking recognition of a foreign judgment under the UFMJRA [Uniform Foreign Money-Judgment Recognition Act] must file a civil action.  (*Renoir v. Redstar Corp.*, *supra*, 123 Cal.App.4th at p. 1151.)  In California, '[c]ivil actions, *without exception*,' must be commenced within a statutorily prescribed limitations period.  (§ 312, italics added.)"  (*Manco, supra,* 45 Cal.4th at p. 207, fn. omitted.)

Moreover, that recognition of a foreign-country money judgment "may be raised by counterclaim, cross-claim, or affirmative defense" in an action (§ 1718, subd. (b)) also suggests that recognition under the Act is subject to the normal procedures in any action. As one authority has written about the predecessor of the Act, a defendant may obtain a dismissal of the foreign-country money judgment recognition action "on the pleadings or in summary adjudication"—the procedures applicable in actions.  (McKnight, *Enforcement of a Foreign Money Judgment in California 1* (No. 2) (1990) The International Practitioner 1.)

By permitting the matter to proceed by way of a motion or petition in the action, the trial court treated the matter as if it were a certain special proceeding, such as petitions to compel, confirm, or vacate domestic or foreign arbitration awards.  (See § 1280 et seq; *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 48 ["Section 1286 does

7

not bar a California judge from confirming a foreign arbitrator panel's award"].) The arbitration statute explicitly provides for special procedures by specifying that "a petition under this title shall be heard in a summary way in the manner and upon notice provided by law for the making and hearing of motions, except that not less than 10 days' notice of the date set for the hearing on the petition shall be given." (§ 1290.2.) The Act, which expressly requires an "action," has no comparable provision for a summary proceeding.

Unlike other special proceedings in Part 3 of the Code of Civil Procedure,[2] the Legislature, in providing for the procedures for recognition of a foreign-country money judgment, only specified that the issue of recognition is to be raised by filing an action or by way of a counterclaim, cross-claims or affirmative defense. (§ 1718.) The Legislature set forth procedures for other special proceedings. For example, as noted, it provided for the specific summary procedures for compelling, confirming, and vacating arbitration awards (§§ 1280 et seq.), and it provided for a registration procedure for recognizing sister-state money judgments. (§§ 1710.10-1710.60.)[3]

The Act is contained in Code of Civil Procedure Part 3—Of Special Proceedings of a Civil Nature. Section 22 defines an action as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 23 defines a special proceeding as "[e]very other remedy." (See *People v. Yartz* (2005) 37 Cal.4th 529, 536.) Generally, with respect to special proceedings, the Legislature has set forth specific procedures, but the only procedure specified for recognition of a foreign-country money judgment is that it be raised by filing an action. Thus, whether recognition of a foreign-country money judgment is an

---

[2]    Part 3 includes such proceedings as writs, contesting elections, contempts, eminent domain, name changes, arbitration, unclaimed property, sister-state judgments, mediation, preferences, tribal injunctions, inspection warrants, and certain proceedings against municipal corporations.

[3]    As to procedures for other special proceedings, see, e.g., sections 1067 et seq. (writs), sections 1230.010-1268.720 (eminent domain).

action or special proceeding, we believe the Legislature intended the procedures for actions to be applicable to proceedings to obtain such recognition.

Requiring the procedures applicable to actions for recognition of a foreign-country money judgment makes sense. Such actions are comparable to any claim for a money judgment. (See Umstetter, *Enforcing Foreign Judgments: In Search of a Treaty to Locate Assets Abroad* (2007) 3 S.C.J. of Int'l L. & Bus. 85, 89 [Uniform Foreign Money-Judgments Act "basically codifies the common law"]); *Sung Hwan Co., Ltd. v. Rite Aid Corporation* (N.Y. 2006) 850 N.E.2d 647, 650; *Lenchyshyn v. Pelko Electric, Inc.* (N.Y.A.D. 2001) 723 N.Y.S.2d 285, 288 ["codifies common-law principles applicable to recognition of foreign country judgments"]; but see *Chase Manhattan Bank, N.A. v. Hoffman* (D. Mass. 1987) 665 F.Supp. 73, 77 [Uniform Foreign Money-Judgments Recognition Act revises and supersedes common law].) Proceedings under the Act may involve disputed issues of fact. For example, if the foreign law cannot be determined, a factual determination may be required. (See 1 Witkin, Cal. Evidence (5th ed. 2012) Judicial Notice, § 29, p.; 136; *Estate of Arbulich* (1953) 41 Cal.2d 86, 90 ["how the foreign country has construed and applied . . . statutes is a question of fact"]; but see Evid. Code, § 310, subd. (b)); *Societe Civile Succession Richard Guino v. Redstar Corp.* (2007) 153 Cal.App.4th 697, 701.) Another issue of fact relevant here may be whether the foreign judgment has been satisfied in whole or in part.

There is nothing in the legislative history of the Act indicating special procedures for recognition, other than specifying that recognition of a foreign-country money judgment must be raised by an action. (See Stats. 2007, ch. 212, p. 2543 [enacting Sen. Bill No. 639 (2007-2008 Reg. Sess.)].) The comment to the Uniform Foreign-Country Money Judgments Recognition Act states that section 6 of the Uniform Act—which section is section 1718 in the California statute—"rejects the use of any registration procedure." (13 (Part II) Uniform Laws Annotated Supp., *supra,* at p. 33.) The comment points out that the "truncated procedures" used in connection with sister-state judgments are appropriate because "there is a strong presumption of fairness and competence attached to a sister-state judgment that justifies use of a registration procedure." (*Ibid.*)

"Unlike the limited grounds for denying full faith and credit to a sister-state judgment, this Act provides a number of grounds upon which recognition of a foreign-country judgment may be denied. . . . The existence of these grounds for nonrecognition reflects the fact there is less expectation that foreign-country courts will follow procedures comporting with U.S. notions of fundamental fairness and jurisdiction or that those courts will apply laws viewed as substantively tolerable by U.S. standards than there is with regard to sister-state courts." (*Ibid.*)[4] The comment further states, "While this Section sets out the ways in which the issue of recognition of a foreign-country judgment may be raised, it is not intended to create any new procedure not currently existing in the state or to otherwise effect existing state procedural requirements. The parties to an action in which recognition of a foreign-country judgment is sought under Section 6 must comply with all state procedural rules with regard to that type of action." (*Id.* at p. 34.) Thus, in this action, state procedures must be followed.[5]

Hyundai asserts that we acquiesced in a truncated or summary proceeding in *Societe Civile Successor Richard Guino v. Redstar Corp., supra,* 153 Cal.App.4th 697.

---

[4]     "Historically, it has been fairly easy for large U.S. companies to win a decision of unenforceability because 'it is often particularly difficult to reconcile American due-process concepts with foreign proceedings.'" (Payne, *Aguinda v. Chevron: The Potential Rise or Fall of Mass Toxic Tort Claims Against U.S. Companies* (2012) 46 The Int'l Lawyer 1067, 1077.)

[5]     We have found little, if any, discussion as to the procedures to be used in various jurisdictions, and the issue may be dependent on the precise wording of the applicable state statutes. (See e.g., *Aguerre v. Schering-Plough Corp.* (N.J. Super. 2007) 924 A.2d 571, 582 [defense under Foreign-Country Money Judgments Act—trial and discovery]; *Servaas, Inc. v. Republic of Iraq (*S.D.N.Y. 2012) 2012 WL 335654 [summary judgment]; *Hennessy v. Marshall* (Tex.App. 1984) 682 S.W.2d 340, 342 ["plenary suit and hearing" required (*Hennessey*)]; *Razo v. Vargas* (Tex.App. 2011) 355 S.W.3d 866, 872 [approving Hennessey]; *Byblos Bank Europe, S.A. v. Sekerbank Turk Anonym Syrketi* (N.Y. Sup. Ct. 2006) 819 N.Y.S.2d 412, 414 fn. 2 ["motion-action"], affd., 837 N.Y.S.2d 54, 885 N.E.2d 191; *Genujo Lok Beteiligungs GmbH v. Zorn* (Me. 2008) 943 A.2d 573, 581-582 [evidentiary hearing within trial court's discretion]; see also Nanda and Pansius, 3 Litigation of International Disputes in U.S. Courts (2d. ed. 2013) Recognition of Foreign Judgments, § 20:6, pp. 20-30 to 20-43 ["The UFMJRA does not prescribe uniform procedures"].)

That case preceded the enactment of the Act, and there is no indication that the issue of the procedure was raised. Moreover, it is not clear what proceedings occurred. There, the defendant brought a "Motion to Challenge Judgment" (*id.* at p. 700). There were "hearings, supplemental submissions, and a motion for reconsideration." (*Id.* at p. 701.) The only issue was whether the French judgment was final, conclusive, and enforceable, a matter we determined as a matter of law. Thus, in effect, the matter could be resolved on the pleadings.

As the Act requires an action, and does not provide for any procedures other than those procedures applicable to actions, a plaintiff, in order to obtain recognition of a foreign-country money judgment must proceed in accordance with the normal procedures applicable to actions and not by way of a motion or petition to recognize the foreign-country money judgment. The Code of Civil Procedure specifies the procedures for an action. (§§ 190 et seq., 307 et seq.) Section 437c, subdivision (a) states, "Any party may move for summary judgment in any *action or proceeding* . . . ." (Italics added.) "The summary judgment provision has various detailed requirements, such as a 75-day notice period prior to the hearing (§ 437c, subd. (a)), a separate statement setting forth undisputed facts with citation to the supporting evidence (§ 437c, subd. (b)(1)), and others. The trial court may not employ special procedures that circumvent the procedures required by statute. (*Magana Cathcart McCarthy v. CB Richard Ellis, Inc.* (2009) 174 Cal.App.4th 106, 116 ["courts are not free to ignore the Legislature's procedural requirements for the convenience of the parties . . . ."]; *People v. Silva* (1981) 114 Cal.App.3d 538, 549 ["Where a statute requires a court to follow a particular procedure, an act beyond those limits is in excess of the court's jurisdiction"]; see also *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1501.)

11

If Hyundai wishes to have its contentions dealt with summarily, it must do so by way of a motion for summary judgment or judgment on the pleadings (§ 438). If it does not succeed in a summary judgment motion or a judgment on the pleadings, the issues will require a trial.

Because we are reversing and remanding the matter on procedural grounds, we do not reach other issues raised, including the offset issue.[6]

## DISPOSITION

The judgment is reversed and remanded for further proceedings in accordance with this opinion. No costs are awarded.

**CERTIFIED FOR PUBLICATION**

MOSK, J.

We concur:

ARMSTRONG, Acting P. J.

KRIEGLER, J.

---

[6] We do not suggest that a party may relitigate the issues decided by the Korean court if that court's judgment is subject to recognition under the Act.